IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TASHANA MITCHELL,

      Plaintiff,

v.

LOUIS DEJOY, Postmaster General,
United States Postal Service

      Defendant.

Case No. 2:18–cv–1385
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson

**OPINION AND ORDER**

This matter is before the Court on Defendant United States Postal Service's (USPS) Motion for Summary Judgment. (ECF No. 38.) The parties have fully briefed the motion and it is ripe for decision. (ECF Nos. 40, 43.) For the following reasons, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's Family and Medical Leave Act (FMLA) interference claim and **DENIES** summary judgment on Plaintiff's FMLA retaliation claim.

**I.**

This case arises out of Plaintiff Tashana Mitchell's former employment with the USPS. Mitchell worked as a full-time custodian at the USPS's Columbus, Ohio facility from September 3, 2016, until her transfer to an Arizona USPS facility on May 25, 2019. (Mitchell Dep. 15:10–22, 110:13; Def. Mot. Summ. J. Ex. 1.) Mitchell worked under two Supervisors of Maintenance Operations, several 204B temporary supervisors, and the Manager of Maintenance Operations. (Mitchell Dep. 63:12–20; Vaughn Dep. 5:8–6:3.)

On January 9, 2017, USPS approved Mitchell to take FMLA leave for her chronic back pain and to care for her autistic daughter. (Romero Decl. ¶3b.) Between December 7, 2016, and January 3, 2020, Mitchell took 1078.91 hours of FMLA leave. (*Id.*) Mitchell alleges that her

1

FMLA leave was denied "probably maybe once or twice" but also testified that her manager did not deny any FMLA leave or accommodation. (Mitchell Dep. 63:2–11; 86.)

### A. Mitchell Denied Safety Captain and Facilitator Trainings

During her employment at USPS, Mitchell requested to attend Safety Captain and Facilitator training classes. (Vaughn Dep. 6:4–7.) Safety Captains handle safety issues around the USPS facility and ensure employees listen to regular safety talks. (*Id.* at 18: 3–12.) Facilitators teach employee training courses. (*Id.* at 19:16–20:15.) Supervisors and managers approve employee requests to attend trainings. (*Id.* at 21:6–11; Jarrell Dep. 13:1–10.) There are no formal requirements to take the training courses, but supervisors consider the employee applicant's workload and whether the employee's schedule would permit them to take time away from work to attend trainings. (Jarrell Dep. 12:23–13:10; 33:23–34:7.) Both Safety Captain and Facilitator positions require additional responsibilities but neither include a raise in pay, benefits, or rank. (Vaughn Dep. 18:15; 19: 20–24.) Rather, the positions show leadership skills and may help boost an employee's resume for a promotion, depending on the job sought. (*Id.* at 20:10–12; 19:8–15.)

Mitchell requested to take Safety Captain and Facilitator training classes eleven times but was never approved. (*Id.* at 6:4–7.) Mitchell testified on deposition that her requests to take training classes were ignored except one email in which the manager replied that there was a waiting list for people to attend and the training was no longer offered locally. (Mitchell Dep. 38:13–20; Ex. 1.) The manager avers that there were no trainings available during the time period for Mitchell to attend. (Jarrell Dep. 14:19–24.)

### B. Mitchell Denied 204B Temporary Supervisor Status

Mitchell also applied to be a 204B temporary supervisor at USPS. (Vaughn Dep. 6:4–7.) A 204B temporary supervisor serves 90- to 120-day periods as a regular supervisor. (*Id.* at 27:19–

2

21.)  To be a 204B temporary supervisor, an employee does not have to attend any classes or training but must meet the following six criteria: (1) "work in maintenance over twelve months," (2) "no live discipline," (3) "no more than two unscheduled absences or absence occurrences in the past 12 months," (4) "no accidents in the past twelve months," (5) "no more than one accident in the past five years," and (6) "be a model employee." (Boozer Dep. 29:12–15; Def. Mot. Summ. J., Ex. 10, hereinafter "Def's Mot.".)  Mitchell did not know about the six criteria to become a 204B temporary supervisor and no one told her that she did not satisfy the criteria. (Mitchell Dep. 18:15–25.)  Mitchell alleges that her supervisors told her the only criteria was to work in maintenance for more than twelve months. (*Id*.)  When she worked longer than twelve months, Mitchell's manager still denied her the 204B position. (Jarrell Dep. 48:4–13.)

USPS avers that Mitchell was not appointed a 204B temporary supervisor because she did not meet the six criteria.  Specifically, she had not worked for a full year the first few times she requested the position and had two accidents in the past five years. (Mitchell Dep., Ex. 1.) Mitchell was also a union steward during a few of the times she applied for 204B temporary supervisor—in April 2017, and October 25, 2017 to November 6, 2017. (Schild Decl. ¶ 3(b).) Union stewards cannot work as 204B temporary supervisors. (Answer ¶ 7; Def. Mot. Summ. J Ex. 1.)

C.  **USPS's Alleged Statements About Mitchell's FMLA leave**

When Mitchell asked why she was denied these positions, the supervisors and manager said she "had to be at the workplace to develop professionally" and that supervisors "needed to be present at work to pass out assignments and manage the workload." (Mitchell Dep. 197:23–198:7; Ex. 1.)  One supervisor told her that the other supervisors believed she was "taking too much time off work" and "exaggerating her daughter's condition." (*Id.* at 83:22–25; 194:2–10.)  Mitchell

3


also overheard supervisors talking amongst themselves that Mitchell should put her daughter "in a home." (*Id.* at 44:3–19.)

### D. USPS's Alleged Retaliation Against Mitchell

Mitchell filed EEOC charges on November 10, 2017, and October 9, 2018, for discrimination based on race, age, and sex. (Answer ¶¶ 9, 11.) Shortly after filing the first charge, Mitchell saw her manager and a supervisor staring at her. (Mitchell Dep. 140:23–141:15.) The manager followed her around for three or four days but never spoke to her and the supervisor broke off communication with her. (*Id.* at 80, 145:7–24; Vaughn Dep. 32.) Other supervisors also stared at Mitchell or drove past her while she was working. (Mitchell Dep. 140:23–141:2; 179:17.) The manager and supervisor denied this and explained that part of the manager and supervisor's job is to observe the custodian's work numerous times each month. (Jarrell Dep. 29:18–31:5; Vaughn Dep. 26:1–16.) Another supervisor refused to answer Mitchell's work-related questions in front of coworkers and issued a late slip to Mitchell in front of her coworkers but not to another custodian who also arrived late. (Mitchell Dep. 53; 118.)

On November 16, 2017, six days after she filed the first EEOC charge, Mitchell alleges a supervisor raised her fist and said, "hit your face against this" to intimidate Mitchell. (*Id.* at 70:13–16.) On December 7, 2017, a few weeks later, two supervisors backed Mitchell into a corner by touching her shoulders, asked her why she took a bathroom break, and proceeded to tell her they were going to observe her doing her work after her break. (*Id.* at 68:16–69:8.) All of these interactions occurred within a month after Mitchell filed the EEOC charge in November 2017. (Def. Mot. Summ. J. at 10.) Mitchell still did not receive facilitator or safety captain training, or 204B temporary supervisor status after filing the EEOC charge. (Mitchell Dep. 81:11–82:25.) She believes her supervisors denied her trainings and the 204B supervisor position, and harassed her

4

because she filed an EEOC charge against them. (Pl.'s Response to Def.'s Mot. Summ. J., Ex. 3., hereinafter "Pl.'s Resp.")

Mitchell's family doctor diagnosed her with depression and anxiety and Mitchell began taking medication in September 2018. (Mitchell Dep. 205:4–11; 212:22–25.) Mitchell attributes her conditions to the harassment and intimidation at work and the stress of caring for her autistic daughter. (*Id.* at 206:3–7.) Her family doctor and therapist advised her to leave the Columbus USPS facility so in May 2019 Mitchell transferred to a USPS facility in Arizona. (*Id.* at Ex. 1; Plaintiff's Response Ex. 4.) Mitchell brings this suit against USPS for (1) interference with her right to take FMLA leave, and (2) retaliation for taking FMLA leave and filing Equal Employment Opportunity (EEOC) claims. (Pl.'s Resp. at 1.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–

5

59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III.

The FMLA entitles employees to take up to twelve weeks of leave within a twelve-month period to care for the employee's own or a family member's "serious health condition." 29 U.S.C. § 2612(a)(1). An employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by the FMLA]," nor may an employer "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(1), (2). Once an employee takes FMLA leave, she is entitled "(A) to be restored…to the position of employee held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). A plaintiff may seek to show a violation of their FMLA rights under two theories of recovery: (1) interference or entitlement under §2615(a)(1), and (2) retaliation or discrimination under §2615(a)(2). *Seeger v. Cincinnati Bell Tele. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012). USPS moves for summary judgment on Mitchell's FMLA interference and retaliation claims.

### A. Interference or Entitlement Claim

To prevail on an interference or entitlement claim, an employee must prove by a preponderance of the evidence that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). The motives of an employer are irrelevant for an interference claim. *Id.* at 512. Therefore, a plaintiff need only prove the above five elements. *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

A plaintiff may show interference with her FMLA leave with retaliatory "adverse actions" by the employer. If an employer takes an adverse employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, "the employer has denied the employee a benefit to which she is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). This is called an interference-by-retaliation claim and requires the plaintiff to show that the employer took an adverse action against her. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 632 (6th Cir. 2018).

The parties dispute only the fifth element—whether USPS denied Mitchell FMLA benefits to which she was entitled by taking an adverse action against her and thus interfering with her rights. Mitchell argues interference-by-retaliation. She claims that after she took FMLA leave and filed EEOC charges her supervisors harassed her and denied her training opportunities and temporary supervisor positions. (Pl.'s Resp. at 7–9.) USPS contends, however, that it is entitled to summary judgment because the supervisors never denied Mitchell FMLA leave or took adverse actions against her. (Def.'s Mot. at 17.)

Mitchell's interference claim fails at summary judgment because there is no issue of fact as to whether she suffered an adverse action. An adverse action is defined in this circuit as "a materially adverse change in the terms of employment." *White v. Burlington N. & Santa Fe Ry. Co.,* 364 F.3d 789, 797 (6th Cir. 2004). Such actions include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 798 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The employment action must be "more disruptive than a mere inconvenience or alteration of job opportunities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000). *De minimis* employment actions are not materially adverse and thus not actionable. *Id.* at 462.

When viewing the evidence in a light most favorable to Mitchell, a reasonable jury could not find that Mitchell suffered a materially adverse change in the terms of her employment. First, she admits that she was not been fired, demoted, had her pay reduced, or had her benefits reduced. Mitchell voluntarily transferred to a USPS facility in Arizona in 2019 but was not fired or demoted in the Columbus facility before transferring. Second, the arguments she does make—she was denied optional Safety Captain and Facilitator training; she was passed over for a 204B temporary supervisor position; her supervisors excessively stared at her and followed her during work; a coworker told Mitchell to hit her head against the coworker's fist; her supervisors made comments that she had to be "present at the workplace" to be a supervisor; she heard that supervisors thought she was "exaggerating her daughter's condition"—are not, once examined, more than *de minimis* employment actions because they do not change the terms of her employment. We examine each of these claims in turn.

USPS's denial of the Safety Captain and Facilitator training are not adverse actions because they did not lead to a materially adverse change in the terms of her employment. Decisions to deny or grant optional training are "within the realm of the employer's business judgment" and are usually not adverse actions. *Vitt v. City of Cincinnati*, 97 Fed. Appx. 634, 639–40 (6th Cir. 2004). Although "a deprivation of increased compensation as the result of a failure to train constitutes an adverse employment action," *Clay v. UPS*, 501 F.3d 695, 710 (6th Cir. 2007), there is no adverse employment action where the training does not lead to a change in benefits or pay. *See Lindsey v. Whirlpool Corp.*, 295 Fed. App'x 758, 768 (6th Cir. 2008) (finding no adverse action in denial of training where the plaintiff did not need the training, and the lack of training did not affect her ability to perform her job or receive benefits). Even if the training could help the plaintiff receive a promotion in the future, courts have not found adverse employment actions where the value of the training and the possibility of a promotion are speculative. *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 345 (6th Cir. 2008) (finding plaintiff's assertion that the leadership training "would have . . . allow[ed] me to be able to be promoted to another position when and if something else opened up" was too conclusory to survive summary judgment); *Ray v. McDonald*, No. 2:14CV348, 2017 WL 1750222, at *16 (E.D. Tenn. May, 3, 2017) (noting that a denial of training was not adverse employment action because the plaintiff's compensation would not increase from the training unless she moved out of her position to a higher position by applying for and being selected as the successful candidate for the higher position).

Here, the Safety Captain and Facilitator training that Mitchell sought are optional, supplemental trainings that do not entail a promotion or a change in pay or benefits. The trainings "might show an interest in leadership" or help an employee obtain a promotion depending on the job sought. (Vaughn Dep. 20:10–12; 19:8–15.) Moreover, there is no evidence that Mitchell was

9

denied a promotion because she did not complete Facilitator of Safety Captain training, or that she applied for a promotion at all. Therefore, even when viewing the record in favor of Mitchell and drawing all reasonable inferences in her favor, USPS's denial of Safety Captain and Facilitator training is not an adverse action because there is only speculative evidence that it would lead to a materially adverse change in the terms of her employment. *See Vaughn*, 302 F. App'x at 345.

Similarly, denial of temporary promotions are generally not adverse actions where there is no change in pay, benefits, or long-term rank. *See Creggett v. Jefferson County Bd. Of Educ.*, 491 Fed. App'x 561, 567–568 (6th Cir. 2012). Mitchell requested to become a 204B temporary supervisor, which is a 90 to 120-day position with no difference in salary or benefits. No reasonable jury could find denying Mitchell this position was a *material* change in her terms of employment because the position is temporary, it is not a promotion, and there is no evidence that it includes higher pay or benefits.

Mitchell's supervisor giving her a late slip during a morning meeting in front of other employee is also not an adverse action because it did not materially affect the terms of her employment. *See Lahar v. Oakland Cnty.,* 304 F. App'x 354, 357–58 (6th Cir. 2008) (finding a written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action).

Finally, the harassment Mitchell endured is not adverse action because it did not adversely change Mitchell's terms of employment. The supervisors' actions—holding a fist up to Mitchell's face and telling her to "hit her head against it," backing her into a corner, questioning her about her bathroom breaks, excessively staring and following her, and pushing her into a corner—are not adverse employment actions in the FMLA interference context. *See Minevich v. Spectrum Health-Meier Heart Ctr.*, 1 F. Supp. 3d 790, 808 (W.D. Mich. 2014) ("mere yelling or harsh

10

treatment is not an adverse employment action"). No reasonable jury could find that the supervisors' actions changed, let alone materially changed, the terms of Mitchell's employment. Therefore, Mitchell did not show any issue of material fact as to whether she suffered an adverse action and her interference claim fails at summary judgment.

### B. Retaliation or Discrimination Claim

The FMLA prohibits employers from discriminating against employees who have used FMLA leave and from using FMLA leave as a negative factor in employment actions. 29 U.S.C. § 2615(a)(2). FMLA retaliation claims based on circumstantial evidence are evaluated under the *McDonnell Douglas* burden-shifting framework. *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 451 (6th Cir. 2017). First, a plaintiff must demonstrate a prima facie case of discrimination, which is not an "onerous" burden. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (Title VII). "To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) he engaged in an activity protected by the Act, (2) this exercise of his protected rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016). Next, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, the plaintiff must demonstrate the proffered reason is pretext for discrimination. *Id.*

Unlike an interference claim under the FMLA, an employer's intent is critical to the analysis of a retaliation claim. *Edgar*, 443 F.3d at 508. "The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights." *Id.*

11

1. **Prima Facie Case**

The parties do not dispute the first two elements of the prima facie case.  USPS argues that it did not take adverse actions against Mitchell and even if it did, there is no evidence of a causal connection between Mitchell's FMLA leave and EEOC charges and the adverse actions. (Def.'s Mot. at 20–30.)  Mitchell argues that, in response to her FMLA leave and EEOC charges, USPS denied her trainings, temporary supervisor status, and harassed her in the workplace. (Pl.'s Resp. at 4.)  When viewed in a light most favorable to Mitchell, there is sufficient evidence to create a dispute of fact as to whether USPS took materially adverse actions against Mitchell and whether those actions were caused or motivated by Mitchell's FMLA leave and EEOC charges.  We therefore examine the third and fourth elements in turn.

    a.  <u>Adverse Action</u>

An "adverse action" in the retaliation context is broader and easier to satisfy than in the interference context.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (citing *Burlington N. and Sante Fe.*, 548 U.S. at 67–71).  In the retaliation context, an adverse action "is not limited to those actions that affect the terms and conditions of employment, or even acts that occur in the workplace." *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 345 (6th Cir. 2008) (quoting *Burlington N. and Sante Fe.*, 548 U.S. at 68).  It is sufficient to show that the action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" or engaging in other protected activity. *Burlington N. and Sante Fe.*, 548 U.S. at 68 (noting that a supervisor's failure to invite an employee to lunch could, under certain circumstances, amount to materially adverse retaliation action).  In analyzing whether a retaliatory act is materially adverse, context matters.  *Laster*, 746 F.3d at 731.  An act that would be immaterial in some situations is material in others.  *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*,

523 U.S. 75, 81–82 (1998)). Still, an individual is not protected from all retaliation, but from "retaliation that produces an injury or harm." *Id.* at 67.

When viewed in a light most favorable to Mitchell, a reasonable jury could find that the USPS took adverse actions against Mitchell that would tend to dissuade her from taking FMLA leave or filing EEOC charges. After she filed an EEOC charge on November 17, 2017, Mitchell's supervisors stopped talking to her, excessively observed her, stared at her, and refused to answer her questions in front of her peers. (Mitchell Dep. 140:23–141:15; 145:7–24; 53.) One morning, despite the office custom of issuing late slips to employees privately, a supervisor publicly issued Mitchell a late slip in front of her coworkers but did not issue a late slip to another employee who arrived late. (*Id.* at 118.) Mitchell claims her supervisors backed her into a corner to question her about taking a bathroom breaks when other employees taking breaks were ignored and told her they were going to watch her work after the break. (*Id.* at 68:16–69:8.) Mitchell also claims that one supervisor raised a fist and said, "hit your face against this." (*Id.* at 70:13–16.) Additionally, USPS never approved Mitchell for Safety Captain or Facilitator trainings or 204B temporary supervisor status. (*Id.* at 81:11–82:25.)

Shunning and avoiding an employee, and excessively staring or observing an employee, like Mitchell's supervisors did to her, are not adverse actions alone. *Creggett*, 491 Fed. App'x at 568. But these actions, coupled with the denying trainings and temporary supervisor status, and other alleged harassment are more than "petty slights or minor annoyances that often take place at work." *Burlington N. and Sante Fe.*, 548 U.S. at 67–69. Looking at the totality of the circumstances, Mitchell presented sufficient evidence of adverse actions because a jury could find that USPS's actions might dissuade a reasonable person from taking FMLA leave or filing an EEOC claim.

13

b. Causation

There is a genuine issue of material fact as to whether Mitchell's protected activity was the but-for cause of USPS's adverse actions. To show a causal connection exists between an employee's protected activity and an employer's action, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *U. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). A plaintiff may establish a causal connection by showing the defendant treated the plaintiff differently from similarly situated employees, the employer's action was temporally proximal to the protected activity, or heightened scrutiny of the employee's work after the plaintiff engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009); *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (noting that the Sixth Circuit generally requires coupling "temporal proximity with other evidence of retaliatory conduct" unless the adverse action and protected activity occurred "extremely close in time.")

A reasonable jury could find that USPS's adverse actions were motivated by Mitchell's protected activity because of the supervisors' criticisms about her FMLA leave coupled with the temporal proximity of the adverse actions to her FMLA and EEOC activity. When Mitchell asked why she was denied the Safety Captain and Facilitator trainings and 204B temporary supervisor position, Mitchell claims that supervisors told her she "had to be at the workplace to develop professionally." (Mitchell Dep. 197:23–198:7.) Later, a supervisor told her that other supervisors believed she was "taking too much time off work" and "exaggerating her daughter's condition." (*Id.* at 83:22–25; 194:2–10.) Mitchell also claims she overheard supervisors talking amongst themselves that Mitchell should put her daughter "in a home." (*Id.* at 44:3–19.) From this evidence

14

a reasonable inference may be drawn that USPS denied her trainings and supervisor status in part because she took too much FMLA-protected time off to care for her daughter.

The temporal proximity between Mitchell's first EEOC claim and the supervisors' subsequent harassment also supports Mitchell's causation argument. Mitchell filed her first EEOC claim on November 10, 2017. (Answer ¶¶ 9, 11. ECF No. 19.) For three to four days after, Mitchell claims that her manager and supervisors followed her around, staring at her but never speaking to her. (Mitchell Dep. 80, 145:7–24.) On November 16, six days after she filed the charge, a supervisor put her fist close to Mitchell's face and said, "hit your face against this a few times." (*Id.* at 70:13–16.) A few weeks after that, on December 7, two supervisors backed Mitchell into a corner by touching her shoulders, asked her why she took a bathroom break, and proceeded to tell her they were going to observe her doing her work after her break. (*Id.* at 68:16–69:8.) Further, after she filed her EEOC claim, a supervisor refused to answer Mitchell's work-related questions in front of coworkers and issued a late slip to Mitchell in front of her coworkers but not to another coworker who also walked in late. (*Id.* at 53; 118). These interactions occurred within a month after Mitchell filed the EEOC charge on November 10, 2017. (Def.'s Mot. at 10.) Coupled with the supervisors' comments about Mitchell's excessive FMLA leave, the temporal proximity of the harassment to the EEOC charge is sufficient evidence for a reasonable jury to find causation. *See Hamilton*, 556 F.3d at 435 (finding an adverse action within three months of plaintiff's EEOC filing temporally proximal).

In sum, there is a genuine issue as to whether USPS took materially adverse actions against Ms. Mitchell and whether USPS took those actions because of Plaintiff's FMLA leave and EEOC charges. The burden of production now shifts to USPS to articulate legitimate, nondiscriminatory reasons for their adverse actions.

### 2. Legitimate, Non-discriminatory Reason

USPS provides legitimate, non-discriminatory reasons for denying Mitchell the 204B supervisor position, denying her Safety Captain and Facilitator trainings, and for supervisors following her and staring at her, but not for backing her into a corner, telling her to hit her face against their fist, and other alleged harassment.  First, USPS proffers that Mitchell did not meet the 204B temporary supervisor criteria because she had two accidents in the past five years and had not worked a full year as a custodian the first few times she applied.  (Mitchell Dep., Ex. 1.)  USPS also argues Mitchell was prohibited from being a supervisor while she served as a union representative.  (Answer ¶ 7.)  Second, USPS proffers that Mitchell was not given an opportunity to participate in the Facilitator or Safety Captain trainings because the classes were no longer offered at the Columbus facility and there was a waitlist.  (Jarrell Dep. 14:19–24.)  Third, USPS provides a legitimate, non-discriminatory reason for supervisors following Mitchell around and staring at her—the supervisors are required to regularly observe custodians performing work.  (Jarrell Dep. 29:18–31:5; Vaughn Dep. 26:1–16.)  For the above adverse actions, the burden shifts back to Mitchell to show the USPS's reasons are pretext.

The USPS does not, however, produce legitimate, non-discriminatory reasons for a supervisor telling Mitchell to hit her face against the supervisor's fist or for pushing Mitchell into a corner and questioning her about a bathroom break.  Defendants did not meet their burden of production and therefore Mitchell does not need to show pretext for these adverse actions.

### 3. Pretext

When viewing the evidence in a light most favorable to her, Ms. Mitchell establishes a genuine issue of fact as to whether the USPS's proffered legitimate reasons for the adverse actions are pretext and were actually motivated by her FMLA leave and EEOC filings.  Once the employer

16

articulates a legitimate, nondiscriminatory reason for the adverse action, a plaintiff must "produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). A plaintiff can demonstrate pretext by showing that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (analogous Title VII case).

Mitchell first argues that USPS's proffered reasons for denying her 204B temporary supervisor status are pretextual because her supervisors communicated that the only requirement to be a 204B supervisor was to work for one year, but they continued to deny her the position even after she worked for longer than one year. (Mitchell Dep. 81:11–83:25.) Even though USPS had six criteria for 204B supervisors that Mitchell did not satisfy, her supervisors did not tell her about the criteria when she asked why she was denied. (*Id.* at 18:15–25.) Instead, they made comments that a supervisor would have to be present and that Mitchell's FMLA leave was excessive. (*Id.* at 83:22–25; 194:2–10.) Even considering Mitchell's FMLA leave as *part* of the decision to deny her 204B supervisor status or trainings is unlawful retaliation. *See Wysong*, 503 F.3d at 448. Therefore, there is sufficient evidence to create a genuine issue of material fact as to whether the USPS's proffered reasons for denying her 204B supervisor status are pretextual for retaliation.

Mitchell also argues that USPS's proffered reasons for denying her Safety Captain and Facilitator trainings are pretextual. USPS sent one email to Mitchell stating that there was a waiting list for people to attend and the training was no longer offered locally. (Mitchell Dep. 38:13–20; Ex. 1.) Mitchell, however, testifies that she saw training classes held at the facility without her even though she had applied to attend. Mitchell claims she requested the trainings

17

many times and USPS only replied to her this one time. A reasonable jury could find that the USPS's reasons were pretextual because Mitchell provided sufficient evidence that there were classes held at the facility and USPS ignored all but one of her requests to attend training.

In *Spellman*, this court found the plaintiff could not establish the defendant's reasons were pretextual by simply pointing to the "vague" nature of defendant's reasons without offering evidence that the employer was motivated in some way by her EEOC activity. *Spellman v. Ohio DOT*, 244 F. Supp. 3d 686, 705 (S.D. Ohio March 22, 2017). Unlike in *Spellman*, here, despite Mitchell's testimony that she is not sure why the supervisors denied her trainings, the supervisors' specific comments about her FMLA leave sufficiently indicate that her FMLA leave might have been a factor in their decisions.

In conclusion, the evidence is not so one-sided to rule for USPS as a matter of law. A reasonable jury could find that Mitchell's exercise of her FMLA rights may have been a motivating factor in her supervisors' decisions not to allow her 204B temporary supervisor appointment, denying her requests for Safety Captain and Facilitator training, and harassing her. That is all that is required for Mitchell to defeat summary judgment on her FMLA retaliation claim.

## IV.

For the foregoing reasons, the Court **GRANTS** summary judgment against Mitchell's FMLA interference claim and **DENIES** summary judgment against Mitchell's retaliation claim. (ECF No. 38.) This case is to remain open.

**IT IS SO ORDERED**.

**9/20/2021**             s/Edmund A. Sargus, Jr.
**DATE**                  EDMUND A. SARGUS, JR.
                          UNITED STATES DISTRICT JUDGE